**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Graef Construction Incorporated, | No. CV-20-01585-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| LS Black-Loeffel Civil Constructors JV LP, *et al.*, | |
| Defendants. | |

At issue is Defendants LS Black-Loeffel Contractors JV (the "JV"), LS Black Contractors, Inc. ("LS BLACK"), Loeffel Engstrand Corporation d/b/a Loeffel Construction ("LOEFFEL"), and Federal Insurance Company's ("FIC") (hereinafter referred to collectively as "Defendant") Motion to Confirm Arbitration Award (Doc. 37), to which Plaintiff Graef Construction Incorporated ("Graef") filed a Response and Cross-Motion/Petition to Vacate Arbitration Award (Doc. 50). Defendant filed a Reply in Support of its Motion to Confirm Arbitration Award (Doc. 56) and a Response to Plaintiff's Cross-Motion (Doc. 58), to which Plaintiff replied (Doc. 59). Plaintiff also filed a Request/Motion for Scheduling Conference Pursuant to Rule 16(b) (Doc. 52), to which Defendant responded (Doc. 53), and Plaintiff replied (Doc. 54). The Court finds these matters suitable for resolution without oral argument. *See* LRCiv 7.2(f). For the reasons set forth below, the Court confirms the arbitration award, and denies as moot Plaintiff's Request for Scheduling Conference.

I.     BACKGROUND

This case arises out of a contract dispute. Defendant was the prime contractor on a design/build contract with the U.S. Army Corps of Engineers ("USACE") for a new Army Reserve training center (the "Project") near Luke Air Force Base. (Doc. 56 at 2.) Plaintiff was awarded the subcontract for the grading, earthwork, and utilities for the Project. (Doc. 56 at 2.)

Defendant contends that despite the fact that a sewage lift station was specified in "every iteration" of the design documents provided to Plaintiff, Plaintiff claimed that the lift station was not included in the subcontract, and demanded a change order to increase the price of the contract before it would perform the work. (Doc. 56 at 2.) Plaintiff contends that the sewage lift station was not buildable as designed, so a change order was required for the work on the lift station to commence. (Doc. 59 at 2-3.) Defendant refused to give Plaintiff a change order, so Plaintiff stopped all work, left the site, and refused to return to the project. (Doc. 56 at 2.) Plaintiff maintains that it "did not stop all work," but was "prevented from continuing" work. (Doc. 59 at 3.) In August 2020, Plaintiff brought suit in this Court alleging that it was not paid for the work it performed, and seeking damages in the amount of $563,985.79 plus interest, attorneys' fees, and costs. (*See generally* Doc. 1, Compl., amended at Doc. 11, First Amended Complaint ("FAC").)

In November 2020, the parties stipulated to stay the litigation pending arbitration. (Doc. 18.) The parties participated in arbitration through the American Arbitration Association ("AAA") to resolve the dispute. (Doc. 50 at 2.) In arbitration, Defendant sought compensation for the cost of completing Plaintiff's unfinished work and fixing defects in the work Plaintiff had completed. (Doc. 56 at 3.) Plaintiff counterclaimed to recover the remaining balance on its contract, including for work not performed and unearned profits. (Doc. 56 at 3.) In his final award ("Award"), issued January 27, 2022, Arbitrator Mark Zukowski ("Arbitrator Zukowski") issued a decision in favor of Defendant and rejected all of Plaintiff's claims. (*See* Doc. 50, Ex. 4.) In February 2022, Defendants

filed a Motion to Confirm Arbitration Award (Doc. 37), but Plaintiff argues that the Award should be vacated pursuant to 9 U.S.C. § 10 and legal precedent. (Doc. 50 at 2.)

## II. LEGAL STANDARD

Federal court review of arbitration awards is limited, and courts are permitted to conduct only a "restricted review" of arbitral decisions. *See, e.g.*, *Rostad & Rostad Corp. v. Investment Mgmt. & Research Inc.*, 923 F.2d 694, 697 (9th Cir. 1991) (citation omitted). The Ninth Circuit has consistently held that sections 10 and 11 of the Federal Arbitration Act ("FAA") provide the exclusive means by which an arbitration award may be vacated or modified. *Biller v. Toyota Motor Corp.*, 668 F.3d 655, 664 (9th Cir. 2012). A district court may vacate an arbitration award only:

(1) where the award was procured by corruption, fraud or undue means;
(2) where there was evidence of partiality or corruption on the part of the arbitrators;
(3) where the arbitrators were guilty of misbehavior by which the rights of any party have been prejudiced; or
(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a)(1)-(4).

## III. ANALYSIS

Plaintiff asks the Court to vacate the arbitration award under section 10 of the FAA. Relying on the Sixth Circuit's standard for vacatur of an arbitration award, Plaintiff alleges that Arbitrator Zukowski's conclusion conflicts with the express terms of the Federal Prompt Payment Act ("FPPA") language in the parties' contract and payment certification, imposes additional requirements, and is not rationally supported or derived from the agreement. (Doc. 50 at 12.) *See Beacon Journal Pub. Co. v. Akron News. Guild*, 114 F.3d 596, 600 (6th Cir. 1997).

In response, Defendant begins by noting that the Ninth Circuit's standard for overturning an arbitrator's decision is "extremely high." (Doc. 56 at 4-5.) Courts applying section 10 of the FAA have found that an arbitration "award may not be vacated even where there is a clearly erroneous finding of fact." *Bosack v. Soward*, 586 F.3d 1096, 1106 (9th

Cir. 2009) (citation omitted). Rather, arbitrators exceed their powers under the FAA when "the award is completely irrational, or exhibits a manifest disregard of law." *Biller*, 668 F.3d at 665. Because this Court is located in the Ninth Circuit, not the Sixth Circuit, the Court applies Ninth Circuit law in its analysis of Plaintiff's argument.

Plaintiff's first main argument is somewhat grounded in Ninth Circuit precedent. In short, the crux of Plaintiff's argument is that Arbitrator Zukowski "recognized the applicable federal law . . . and then ignored it entirely." (Doc. 50 at 6.) To support its argument that Arbitrator Zukowski ignored the applicable law, Plaintiff contends that he recognized that the elements of the FPPA regarding timely payment applied, and acknowledged that Defendant's payments to Plaintiff were late pursuant to the FPPA's time frame. (Doc. 50 at 6-7, Ex. 4.) Plaintiff also takes issue with Arbitrator Zukowski's finding that Plaintiff's material breach took place prior to the payments being due. (Docs. 50 at 7; 59 at 6.) Plaintiff explains that Arbitrator Zukowski's finding is "completely irrational" and exhibits a manifest disregard for the law because the late-paid pay applications were for May and June, and Defendant did not allege a breach by Plaintiff until mid-August, nor was a Notice of Default sent to Plaintiff notifying it of any breach until September 11, 2019. (Doc. 50 at 7, 10, Ex. 7.) Plaintiff also alleges that, pursuant to the contract between the parties, pay applications were required to be submitted monthly, and Arbitrator Zukowski failed to acknowledge the monthly billing requirement. (Doc. 59 at 5-6.) Further, Plaintiff claims that Arbitrator Zukowski failed to "define the [material] breach or state the date of occurrence." (Doc. 50 at 9.) According to Plaintiff, the evidence presented clearly showed that Defendant was withholding payment—and thus in material breach of the parties' contract—prior to Plaintiff's termination. (Doc. 50 at 11.)

Defendant maintains that Arbitrator Zukowski's award was neither irrational nor in manifest disregard of the law. According to Defendant, Plaintiff's claims that it was late in paying Plaintiff for its May and June work are misleading. (Doc. 56 at 5.) The pay applications Plaintiff cites were not due in May and June, but were for work performed in May and June, and "applications always lag behind the work." (Doc. 56 at 5, Exs. 7, 13.)

Further, before Defendant could pay Plaintiff, it was an "absolute condition precedent" that the USACE had to pay Defendant. (Doc. 56 at 5, Exs. 2, 3 § 7.2.1.) The USACE chose to combine the May and June 2019 billings, which delayed payment until July 26, 2019, meaning that the 7-day FPPA period began to run at that time. (Doc. 56 at 5-6, Ex. 2.) The check for May was paid on August 2, 2019, within the FPPA deadline, and the check for June was issued four days late on August 6, 2019. (Doc. 56 at 6, Exs. 5, 6.) Nonetheless, Arbitrator Zukowski found that Plaintiff waived any claim relating to untimely payment because the June pay application contained a release of all claims against Defendant through June 30, 2019, once it received payment. (Docs. 56 at 5, 50, Ex. 4 at 6.) Defendant also argues that the late payment was not a material breach, and even if it was, the FPPA provides a remedy for late payments—accrued interest. *See Foundation Dev. Corp. v. Loehmann's Inc.*, 788 P.2d 1189, 1201 (Ariz. 1990) (finding that the presence of a "time is of the essence" clause "works no magic to transform trivial untimeliness into a material breach"); 48 C.F.R. § 52.232-27(c)(2). Additionally, even if the breach was material, Defendant argues it cured the breach by paying Plaintiff, and Plaintiff cashed the checks. *See Murphy Farrell Dev., LLLP v. Sourant*, 272 P.3d 355 (Ariz. Ct. App. 2012) (holding that only an "uncured material breach of contract relieves the non-breaching party from the duty to perform and can discharge that party from the contract"); Restatement (Second) of Contracts § 242 cmt. a (non-breaching party's duties to perform are discharged only if material breach is not capable of being cured or is not cured within a reasonable time).

Defendant also disputes Plaintiff's contention that it was wrongfully withholding payment from Plaintiff. (Doc. 56 at 7-8.) Defendant explains that it never billed the government for Plaintiff's fifth, sixth or seventh pay applications, because these pay applications were fraudulent and unsubstantiated, so no obligation to pay Plaintiff ever arose. (Doc. 56 at 7.) For example, in August, Plaintiff billed $73,813, despite having only two laborers perform a total of 13 man-hours with no equipment. (Docs. 56 at 8; 50, Ex. 3 at 9.)

Here, the Court agrees with Defendant. As discussed above, in the Ninth Circuit, a claimant must meet a high standard to prove that an arbitrator has exceeded his or her powers. *More Light Investments v. Morgan Stanley DW Inc.*, 415 F. App'x 1, 2 (9th Cir. 2011). The mere fact that the way in which Arbitrator Zukowski applied the provisions of the FPPA differed from Plaintiff's desired approach does not reflect a "manifest disregard" of the law. The Court finds that Arbitrator Zukowski's analysis was reasonable, not completely irrational, and Plaintiff has presented no evidence to show that he intentionally disregarded the FPPA. *See Bosack*, 586 F.3d at 1104. Thus, Plaintiff cannot show that Arbitrator Zukowski exceeded his powers under the FAA. 9 U.S.C. § 10(a)(4).

Plaintiff next contends that Arbitrator Zukowski displayed "evident partiality" because he allowed Defendant to submit a demonstrative exhibit that impeached Plaintiff's demonstrative exhibit, and also because he did not enforce a subpoena to the subcontractor that was hired to replace Plaintiff. (Doc. 50 at 13-15.) According to Plaintiff, these facts show that Arbitrator Zukowski was partial to Defendant.

Defendant disputes Plaintiff's claim that there was "evident partiality" because Arbitrator Zukowski allowed Defendant to submit a demonstrative exhibit into evidence. (Doc. 56 at 10.) As Defendant points out, 9 USC § 10(a)(3) has been interpreted to allow vacatur where an arbitrator refuses to consider proffered evidence. (Doc. 56 at 10.) Defendant argues that the arbitrator here did no such thing—in fact, Arbitrator Zukowski did the opposite—he allowed Defendant to submit a demonstrative exhibit for the purposes of impeaching one of Plaintiff's witnesses, and although Plaintiff initially objected to the exhibit, it withdrew its objection. (Doc. 56 at 10, Ex. 11 56:4-6.) Moreover, with regard to Plaintiff's subpoena argument, Defendant counters that Plaintiff fails to show exactly how Arbitrator Zukowski had the power to compel a Wisconsin corporation to respond to a subpoena signed by an arbitrator in Arizona. (Doc. 56 at 11.) Defendant is correct in observing that Plaintiff never sought to have the subpoena enforced by the Court, as the FAA allows, nor did it object to proceeding with the hearing without the records. (Doc. 56 at 11-12.) *See* 9 U.S.C. § 7.

The Court also agrees with Defendant on this issue. To vacate an arbitration award on the grounds of "evident partiality," the moving party must show specific facts that create a reasonable impression of bias. *Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 640 (9th Cir. 2010). Examples of such partiality include an arbitrator's financial interest in the outcome of the arbitration, failure to disclose prior consulting work for a party, family relationship that made the arbitrator's impartiality suspect, and former employment by one of the parties. *J-Hanna v. Tucson Dodge Inc.*, 2014 WL 504881, at *4 (D. Ariz. Feb. 7, 2014). Plaintiff has cited to no such facts, and therefore cannot show that Arbitrator Zukowski was partial to Defendant. 9 U.S.C. § 10(a)(2). Accordingly, the Court will confirm the arbitration award at issue.

## IV.     ATTORNEYS' FEES

Pursuant to A.R.S. § 12-341.01 and Section 11.4.5 of the parties' contract, Defendant requests its attorneys' fees and costs in defending this action because Plaintiff's claims arise from contractual agreements between the parties. The Court agrees that Defendant is entitled to seek reasonable attorneys' fees and costs and may submit an application for fees and costs that complies with the applicable rules.

**IT IS THEREFORE ORDERED** granting Defendant's Motion to Confirm Arbitration Award (Doc. 37), and denying Plaintiff's Cross-Motion/Petition to Vacate Arbitration Award (Doc. 50).

**IT IS FURTHER ORDERED** denying as moot Plaintiff's Request/Motion for Scheduling Conference Pursuant to Rule 16(b) (Doc. 52).

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment accordingly and close this matter.

**IT IS FURTHER ORDERED** that Defendant shall file any application for fees within 14 days of the date of this Order.

Dated this 14th day of September, 2022.

Honorable John J. Tuchi
United States District Judge